## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ANNE MARIE REEVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-3168 |
| | ) | |
| CITY OF SPRINGFIELD, et. al, | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court is Defendants' Motion for Summary Judgment (d/e 18). For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

### I.    INTRODUCTION

On May 9, 2023, Plaintiff, Anne Marie E. Reeves, filed the instant action pursuant to 42 U.S.C. §1983, alleging various violations of her rights. *See* d/e 1. In Count I, Plaintiff alleges Defendants, Officer Gray and Officer Fairlee, violated Plaintiff's Fourth Amendment rights for false arrest and wrongful detention. *Id* at pp. 3-4. In Counts II and III, Plaintiff brings a state law claim for

1

malicious prosecution against the Defendant Officers, as well as the City of Springfield. *Id.* at pp. 4-5.

On April 10, 2025, Defendants filed a Motion for Summary Judgment (d/e 10). Plaintiff filed her response on May 16, 2025 (d/e 20), and Defendants filed their Reply on May 22, 2025 (d/e 21).

Defendants are entitled to summary judgment as to their initial conversation with and arrest of Plaintiff. However, summary judgment is denied as to Plaintiff's wrongful detention and malicious prosecution claims.

## II.    JURISDICTION AND VENUE

The Court has subject matter jurisdiction over Plaintiff's Section 1983 claim because it arises under the United States Constitution and is brought pursuant to a federal statute. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Because Plaintiff's state law claims against Officer Gray, Officer Fairlee, and the City of Springfield are related to Plaintiff's Section 1983 claim, such that the claims form part of the same case or controversy, the Court will exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C § 1367(a).

2

The events giving rise to Plaintiff's claims occurred in Sangamon County, Illinois, which is located within the boundaries of the Central District of Illinois. Venue is, therefore, proper in this District. *See* 28 U.S.C. § 1391(b)(2) (stating that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

## III.   FACTS

The Court draws the following facts from the parties' statements of material facts in the Defendants' Motion for Summary Judgment (d/e 18), Plaintiff's Response in Opposition (d/e 20), and Defendants Reply (d/e 21). Any fact submitted by any party that was not supported by a citation to evidence will not be considered by the Court.   *See* Civ. LR 7.1(D)(2)(b)(2). Any response to an allegedly disputed fact unsupported by evidentiary documentation is deemed admitted.  *Id.*

At all relevant times, Officers Gray and Fairlee were employed by the City of Springfield. (d/e 18, ¶ 1). On October 21, 2022, Laura Newquist ("Newquist") called the police, alleging she was robbed and battered. (d/e 20, p. 4, ¶ 1). Officer Gray responded to this call and interviewed Newquist. *Id.* During this interview, Newquist admitted

3

that she smoked crack that day. (d/e 20, p. 4, ¶ 2). Newquist informed Officer Gray that Plaintiff picked Newquist up with two other people in Plaintiff's car. *Id.* at ¶ 4. Newquist also told Officer Gray that the two other people in Plaintiff's car cut Newquist's face with a sharp object, sprayed her with pepper spray, and stole her money. *Id.* Thereafter, Newquist was left at a church parking lot. *Id.* No evidence was found in the church parking lot substantiating Newquist's story. *Id.* at p. 5, ¶ 6.

After obtaining this information, Officers Gray and Fairlee went to Plaintiff's residence. (d/e 18, ¶ 2; d/e 20, p. 3 ¶ 2). Before their arrival, the officers did not obtain an arrest warrant for the Plaintiff.

While on foot and trying to locate Plaintiff's residence within an apartment complex, Officers Gray and Fairlee had a conversation with each other about Ms. Newquist. Specifically, Officer Gray told Officer Fairlee that Newquist's judgment was not the best because she is a drug user. (d/e 20, p. 5 ¶ 9). After asking other residents for directions to the correct building, Officers Gray and Fairlee went to Plaintiff's building and walked onto her front porch, where Officer Gray attempted, unsuccessfully, to open the locked screen door before knocking.  (d/e 20, p. 5 ¶ 12).

4

The Officers agreed that Officer Gray should "check the back" while Officer Fairlee remained by the front door of Plaintiff's residence.  Officer Gray then walked around the side of Plaintiff's building, where his body camera shows a door leading from Plaintiff's unit into a fenced-in backyard with a gate.

As Officer Gray returned to the front of the residence, Plaintiff opened the front door and stood in the doorway, briefly holding the screen door open. (d/e 20, p. 6 ¶ 13). When Officer Gray asked for Plaintiff's name, she closed and locked the screen door before responding that her name was Anne. Officer Gray told Plaintiff he needed to speak with her. Plaintiff responded that any conversation could be done through the screen door. (d/e 20, p. 6 ¶ 16). Officer Gray told Plaintiff that she would be read *Miranda* rights, and Plaintiff inquired whether she was under arrest, to which Officer Gray said, "No". (d/e 20, p. 6 ¶ 17-18). Plaintiff then attempted to close the front door to which Officer Fairlee said "No," and Officer Gray told Plaintiff they only wanted to talk. (d/e 20, p. 6 ¶ 19-20). Officer Gray remarked: "We might've gotten off on the wrong foot here. It looked like you were gonna, like, run." Officer Fairlee agreed.

5

Plaintiff informed the officers she had children inside of the home and asked whether she could come on the porch and whether she was being arrested. (d/e 20, p. 7 ¶ 21-22). Officer Gray stated again they just wanted to talk. *Id.* After the Officers allowed Plaintiff to ask her husband to stay inside with the children, Plaintiff stepped onto the porch and was read her *Miranda* rights. (d/e 20, p. 7, ¶ 23-24). After Plaintiff was on the porch, Officer Gray asked Plaintiff questions about the alleged robbery earlier that day. (d/e 20, p. 7, ¶ 26). Plaintiff admitted to offering and providing Ms. Newquist with a ride in Plaintiff's vehicle. (d/e 18, ¶ 9). Plaintiff further admitted that she picked up Ms. Newquist with two other women in the car, that a physical altercation occurred inside the vehicle, and that Ms. Newquist left the vehicle near a church parking lot. (d/e 20, ¶ 10). Plaintiff informed the officers that Newquist appeared to be under the influence during the interaction the women had earlier in the day. (d/e 20, p. 7 ¶ 27).

Thereafter, Officer Gray asked for permission to search Plaintiff's vehicle for blood and evidence of pepper spray being deployed. Plaintiff responded that the officers would have to ask Plaintiff's husband since it was his vehicle. (d/e 20, p. 7 ¶ 28). After

answering the officers' questions, Plaintiff attempted to re-enter her home but Officer Gray was standing in her path. When Plaintiff asked Officer Gray to move, she was informed that Officer Gray was going to detain her in handcuffs. Plaintiff locked her wrists and did not initially comply with the officers' instructions to place her hands behind her back. After a very brief period, Officers Gray and Fairlee were able to place Plaintiff in handcuffs and put her in the back of a police vehicle. (d/e 20, pp. 7-8 ¶¶ 29, 30, 31).

After Plaintiff was placed in the vehicle, Officer Gray asked Plaintiff's husband for consent to search his vehicle. Plaintiff's husband initially declined, but he relented after Officer Gray informed Plaintiff's husband the vehicle would be impounded if he did not consent to the search at that time. (d/e 20, pp. 8 ¶ 33). A search of the vehicle did not find any blood or evidence that pepper spray had recently been deployed.

Once the search of the vehicle was conducted, Officer Fairlee transported Plaintiff to the Sangamon County Jail. On October 23, 2024, Plaintiff appeared in court for a bond/probable cause hearing. (d/e 20, pp. 8-9 ¶¶ 35, 36). Plaintiff was charged with armed robbery, aggravated battery/use of a deadly weapon, and resisting or

7

obstructing a police officer. On October 24, 2024, the State's Attorney dismissed all charges against Plaintiff, and she was released from jail later that same day.

### IV.   LEGAL STANDARD

When moving for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of showing, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) & (c); *Hummel v. St. Joseph Cty Bd. of Comm'rs*, 817 F.3d 1010, 1015–16 (7th Cir. 2016).

"The moving party has the burden of either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Id.*  But even where there is no dispute as to the basic facts of a case, summary judgment will not be appropriate "if the parties disagree on the inferences which may reasonably be drawn from those undisputed facts."  *Cent. Nat. Life Ins. Co. v. Fidelity & Deposit Co. of Md.*, 626 F.2d 537, 539–40 (7th Cir. 1980).  The facts and all

8

reasonable inferences derived therefrom are viewed in the light most favorable to the non-moving party. *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008).

## V. ANALYSIS

Plaintiff Anne Marie Reeves alleges Officers Gray and Fairlee violated her constitutional rights under 42 U.S.C. § 1983 to be free from false arrest, wrongful detention, and malicious prosecution. (d/e 1). Defendants move for summary judgment as to each count, so the Court will take each argument in turn.

### A. Defendants' Conversation with Plaintiff was not an impermissible seizure.

The Fourth Amendment provides equal protection to a home's curtilage, the areas immediately surrounding the home itself. See *Oliver v. United* States, 466 U.S. 170, 180 (1984). Specifically, the Supreme Court has found that the curtilage is "part of [the] home itself for Fourth Amendment purposes." *Id.* Given these guaranteed protections law enforcement officers must have a warrant to enter either the curtilage or the home unless an exception applies. See *Lange v. California*, 594 U.S. 295, 301 (2021). These exceptions allow for a warrantless entry when: exigent circumstances exist, the

9

resident consents to entry, or the officers conduct a knock-and-talk. *Id.;* see *Florida v. Jardines*, 569 U.S. 1, 6 (2013).

Here, Plaintiff argues the Defendants' questioning of Plaintiff on her porch was a warrantless seizure and a Fourth Amendment violation as there were no exigent circumstances. (d/e 20, pp. 14-17). Plaintiff further argues she was seized by Defendants throughout the entirety of the parties' conversation.

Defendants argue exigent circumstances justified Plaintiff's seizure. Specifically, Defendants argue that they reasonably believed that Plaintiff might flee, which justified Plaintiff's seizure under the exigent circumstance exception to a warrantless search or seizure. (d/e 21). In support, Defendants point this Court to Defendant Gray's statement that he thought Plaintiff might flee, coupled with Plaintiff's departure from the alleged crime scene earlier in the day.

Exigent circumstances justifying a warrantless search or seizure include destruction of evidence, emergency aid, and hot pursuit. See *Lange* at 2017. Defendants have not provided any evidence they observed Plaintiff destroying any evidence, nor were the Defendants rendering emergency aid. However, Defendants were concerned Plaintiff would flee especially after they knocked on

10

Plaintiff's locked screen door. Defendant Gray's body camera showed a fenced in yard behind the address. This yard had access to the back of Plaintiff's house through a door connected to the home, as well as a gate in the fence which allowed someone in the yard to leave without being seen from the front door.

Defendant Gray was worried Plaintiff might flee through the back of her home while Defendants were unable to see her. This concern is supported by Plaintiff's departure from the scene earlier in the day and her demeanor when speaking to the Defendants. Therefore, the Court is persuaded exigent circumstances existed to bypass a warrantless seizure. *See Tom v. Voida*, 963 F.2d 952, 957-58 (7th Cir. 1992) (fleeing raises reasonable suspicion of criminal activity such that police may even reasonably use handcuffs when executing an investigative stop without converting stop into an arrest).

Even if the exigent circumstances exception did not apply, the Court finds that the "knock-and-talk" exception does apply to the conversation Defendants had with Plaintiff. A police officer not armed with a warrant may approach a home and knock, precisely because

11

that is "no more than any private citizen might do." *Kentucky v. King*, 563 U.S. 452, 469 (2011).

Here, the Defendants approached Plaintiff's residence and knocked on her locked screen door. Plaintiff answered the door, identified herself, and Defendant Gray told Plaintiff they needed to talk. Defendant Gray proceeded to read Plaintiff her *Miranda* rights, after which Plaintiff inquired whether she was under arrest. Defendant Gray confirmed Plaintiff was not under arrest, and Plaintiff began to close her door. Defendant Fairlee who was farther away from Plaintiff near the front of the porch, told Plaintiff "No," and the Defendants reiterated they just wanted to speak with Plaintiff. Plaintiff proceeded to explain to Defendants there were kids inside and asked whether she could step onto the porch without being handcuffed. Once Defendants confirmed Plaintiff could step onto the porch without being handcuffed, Plaintiff exited her home and closed the front and screen doors behind her. Defendant Gray read Plaintiff her rights, and for the next ten minutes, the parties had a conversation about Plaintiff's interaction with Ms. Newquist earlier in the day. Defendants questioned where Plaintiff had been, whom she had transported in her car, and what had occurred. At the conclusion

12

of this ten-minute conversation, Plaintiff was placed in handcuffs by the Defendants.

Plaintiff argues that, from the inception of this conversation with Defendants, Plaintiff was seized without a warrant, in violation of the Fourth Amendment. Defendants argue that, after the Defendants knocked on Plaintiff's door, Plaintiff came onto the porch to speak with them and did so voluntarily. Defendants argue that the voluntariness of Plaintiff's participation in the conversation negates any claim of unlawful coercion or seizure. Additionally, Defendants argue that any seizure would have been justified because the officers had a reasonable suspicion supported by facts that Plaintiff previously had engaged in criminal activity.

In *United States v. Jerez*, the Seventh Circuit provided guidance regarding a "knock-and-talk" and how to assess when this interaction turns into a seizure. *United States v. Jerez*, 108 F.3d, 684. *Jerez* involved a nighttime encounter at a motel. Police knocked on the door of the motel room for three minutes. They knocked on the window for an additional one and one-half minutes, all without producing an answer from the occupants. The police then shone a flashlight through a small opening in window drapes onto one of the

13

occupants as he lay on a bed and commanded, "Police, Open the door."

The Seventh Circuit concluded that, based on the totality of circumstances surrounding the encounter, the motel occupants were seized. The Court distinguished cases in which occupants voluntarily opened the door after a daytime knock and engaged in a consensual encounter.

> Once the officers had been refused admittance, their continued efforts to rouse the occupants out of bed certainly prevented them from ignoring the continued requests and from maintaining the privacy and solitude of their dwelling. The deputies' persistence, in the face of the refusal to admit, transformed what began as an attempt to engage in a consensual encounter into an investigatory stop.

*Jerez*, 108 F.3d at 691-92. The law enforcement officers refused to take "no" for an answer and a "reasonable person in [the plaintiffs'] situation could conclude only that the deputies would not leave unless the door was opened." *Id.* at 692-93. The court further found that when the occupant opened the door, he submitted to the officers' show of authority. *Id.* at 692.

Here, Plaintiff almost immediately responded to police knocking on her locked screen door. Plaintiff opened her front door and stood in the doorway speaking to the officers through the screen door.

14

Under this circumstance, the Plaintiff cannot claim that she was seized when she voluntarily opened the door to speak to the officers. Plaintiff voluntarily identified herself to the officers and asked whether she was under arrest. The officers informed Plaintiff she was not under arrest, and she began to shut the door. The officers reiterated they just wanted to talk. Plaintiff asked whether she could come onto the porch without being arrested. Plaintiff walked out on the porch, was read her *Miranda* rights, sat in a camping chair, and told the Defendants about her interaction with Ms. Newquist earlier in the day. All of these factors are relevant to whether a reasonable person would believe it was within their power to terminate the encounter. At the end of the approximately 10-minute conversation, Plaintiff stood up from her chair and attempted to walk back inside her home. Defendant Gray blocked her entry and told Plaintiff that she was being detained in handcuffs. Plaintiff was then placed in handcuffs by the Defendant officers who walked Plaintiff to a police car and secured her inside.

A review of the totality of the circumstances does not indicate that Plaintiff was seized, but rather was voluntarily answering officers' questions, and when through answering questions, she

15

attempted to go back inside her home. Specifically, Plaintiff moved towards her front door and Defendant Gray stood in her path. Plaintiff asked Defendant Gray to move, and Plaintiff was informed she was being detained. Defendant Gray detained Plaintiff in handcuffs based on her answers to the questions posed and how Plaintiff's story lined up with that of the victim, Ms. Newquist.

Defendants reasonably believed Plaintiff was likely to flee during their interaction with the Plaintiff given her ability to escape without immediate detection. Additionally, Defendants permissibly executed a "knock-and-talk" with Plaintiff on her front porch which she voluntarily participated in. Therefore, under either exception the Defendants did not impermissibly seize the Plaintiff.

### B. Defendants Gray and Fairlee Had Probable Cause to Arrest the Plaintiff.

To state a claim for false arrest under § 1983, a plaintiff must allege that there was no probable cause for his arrest. *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 984 (N.D. Ill. 2009) (citing *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009)). The existence of probable cause is an "an absolute defense to any § 1983

claim for false arrest." *Abbott v. Sangamon County*, 705 F.3d 706, 713-14 (7th Cir. 2013).

A police officer has probable cause to make an arrest if a reasonable person, knowing all of the facts and circumstances known to this officer, would believe that the individual in question has committed or is committing a crime. *Seiser v. City of Chicago*, 762 F.3d 647, 654 (7th Cir. 2014). Whether an arrest is supported by probable cause is usually a question of fact decided by the jury. *Abbott*, 705 F.3d at 714. However, if the underlying facts are undisputed, the court can make that decision on summary judgment. *Id.*

Defendants argue that they had probable cause to believe Ms. Reeves was involved as a participant in a robbery and assault, and, therefore, the arrest of Plaintiff was reasonable based on a totality of the circumstances known to the officers at the time. Defendants argue that the alleged victim of the robbery identified the Plaintiff by name when officers responded to an emergency call. (d/e 18, p. 6). The victim had injuries consistent with the story told to responding officers, consisting of a laceration to her face and symptoms of pepper spray exposure. *Id.* After this interaction with the victim, the officers

17

did a vehicle registration check, which confirmed a teal Honda was registered to Plaintiff's husband.

Defendants also argue that Plaintiff admitted to offering and providing a ride to Ms. Newquist and two other women, that a physical altercation occurred, and that Plaintiff saw the victim leave the vehicle at a church. *Id* at p. 7. These facts, which were the circumstances surrounding the visit to Plaintiff's residence, Defendants argue, support the core facts of the offense for which Plaintiff was arrested. Further, Defendants argue this information provided probable cause to the officers to arrest the Plaintiff and defeats the wrongful arrest claim.

Plaintiff, in opposition, notes that the alleged victim in this matter, Ms. Newquist, has a history of drug use, which the officers knew about at the time of the emergency response to Ms. Newquist's call to the police and during their interactions with Plaintiff thereafter. This fact alone, Plaintiff argues, proves that Ms. Newquist was not a reasonably credible victim. In support, Plaintiff points to the officers' knowledge of Ms. Newquist's use of crack cocaine, an admission by Officer Gray that the victim's story did not make sense, no evidence of a crime scene at the church parking lot, and the

officers' belief that Ms. Newquist did not always utilize good judgment. Further, the Plaintiff cites the *Hebron* case in support.

Whether officers had probable cause is an objective inquiry; their subjective beliefs are irrelevant whatever those beliefs may be. *See Abbott*, 705 F.3d at 714. As a result, even if an officer believed that probable cause was lacking, the Court still has the duty to objectively determine if probable cause was present.

Here, the officers responded to an emergency call and met with a victim, who had a laceration to her face which required medical attention. During their conversations with the alleged victim, the victim gave Plaintiff's name specifically as an individual involved in the robbery of her personal items. Plaintiff was identified as the driver of the vehicle Ms. Newquist was in while she was robbed by two other women also being transported by the Plaintiff.

Probable cause can be based on a single identification from a credible eyewitness. *Hart v. Mannina*, 798 F.3d 578 (7th Cir. 2015); *See also Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012) ("Identification by a single eyewitness who lacks an apparent grudge against the accused person supplies probable cause for arrest."). While Plaintiff concedes that a credible eyewitness can form the

19

requisite probable cause by identifying a possible perpetrator, Plaintiff argues Ms. Newquist is not a reliable witness. Plaintiff bases this argument on Ms. Newquist's drug use, which was known by the officers, and the confusing nature of her story. Further, Plaintiff argues the lack of pepper spray and blood in the Plaintiff's vehicle is evidence the arrest was improper.

As an initial matter, the lack of pepper spray or blood in Plaintiff's husband's vehicle was not discovered until after Plaintiff was already under arrest, handcuffed, and in the back of a police vehicle. Therefore, such information is irrelevant to the question the Court is currently determining: that is whether probable cause existed to arrest the Defendant. Turning to Ms. Newquist's credibility and reliability as a witness, the Court finds Ms. Newquist reasonably credible.

Plaintiff cites *Hebron v. Touhy* in support of her contention that this Court should find Ms. Newquist is not a credible victim as she is a drug user and likely held a grudge against the Plaintiff for leaving her in a church parking lot. Plaintiff argues that like in *Hebron*, given the likelihood of a grudge, further investigation was necessary before an arrest, given the negative relationship between the accuser and

accused. *Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir. 1994). In *Hebron*, a landlord brought suit for false arrest regarding a landlord-tenant dispute. The district court granted summary judgment for the defendant officers on the Plaintiff's false arrest claim, concluding the tenants' complaint plus the officers' investigation into a lack of hot water in their apartment and the landlord's admitted denial of access to a washer and dryer supplied the necessary probable cause for arrest. *Id.*

Here, Ms. Newquist told the officers that Plaintiff came to pick her up from a friend's house. Thereafter, Ms. Newquist was picked up by the Plaintiff along with two other women, one of whom she owed money to. (d/e 18, Exhibit 2). Ms. Newquist reported an altercation while in Plaintiff's vehicle with the two women, who sprayed her in the eyes with pepper spray and cut the right side of her face. *Id.* During this altercation, Ms. Newquist's wallet was taken from her, she was able to exit the car, and found herself in a church parking lot.

Although Plaintiff argues that Ms. Newquist's use of an illicit substance and the fact her story was somewhat confusing make her a noncredible witness, at least to the officer's knowledge at the time

21

of the arrest, this Court disagrees. The physical injuries to Ms. Newquist that were clearly visible and the calm and straightforward manner in which she recounted the events would support a finding that she was at least facially credible. In addition, once the officers started to investigate what she told them, namely looking for the individual she identified, they began to corroborate her story.

Those investigatory steps taken here, like the officers in *Hebron,* included questioning the alleged perpetrator, trying to verify the victim's story, and looking for evidence. After determining that Plaintiff had a vehicle tied to Plaintiff's personal phone number, which matched the vehicle described by Ms. Newquist, the officers went to Plaintiff's residence and began to question her.

Plaintiff's answers to the officers' questions supported the basic story Ms. Newquist recited. These answers confirmed who was in the vehicle, that a physical altercation occurred, and that Ms. Newquist was dropped off at the church parking lot. Although Plaintiff denied that she was involved in any robbery or scheme, that pepper spray was ever used, or that Ms. Newquist was injured, the police were not required to believe Plaintiff's version of events.

Plaintiff further argues that there was no evidence of a crime scene in the church parking lot where Ms. Newquist was dropped off or in Plaintiff's husband's vehicle. Although Plaintiff refers to the church parking lot as the crime scene, the Plaintiff's husband's vehicle was more akin to the scene of the alleged crime. Plaintiff's husband's vehicle, which the police officers were unable to search until *after* Plaintiff was placed under arrest, did not have any evidence of pepper spray or blood. This information, however, was not discovered until after Plaintiff was already arrested.

Probable cause "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). Probable cause is established where a probability or a substantial chance of criminal activity exists and does not require a certainty that a crime was committed. *Garcia v. Posewitz*, 79 F.4th 874, 879-80 (7th Cir. 2023). The Court finds Officers Gray and Fairlee had probable cause to arrest the Plaintiff based on the totality of the circumstances known to them at the time. Plaintiff confirmed basic details of Ms. Newquist's story, there were physical injuries observed by the officers that supported Ms. Newquist's chronology of events, and Plaintiff was identified by name and vehicle. This is enough to support an arrest as there was a

23

probability of criminal activity, especially given Plaintiff's alleged role as the driver of the vehicle in which the alleged victim was robbed.

Officers Gray and Fairlee are entitled to summary judgment as to Plaintiff's false arrest claim as to her initial arrest, so Defendant's motion for summary judgment is GRANTED as to Count I.

### C. Defendants are not Entitled to Summary Judgment as to Plaintiff's Wrongful Detention Claim.

Along with false arrest, Plaintiff alleges a wrongful detention claim in Count I. (d/e 1, 20). This wrongful detention stems from the period of time after Plaintiff was arrested, placed in a police car, and the Defendant officers completed a search of Plaintiff's husband's vehicle. For the following reasons, Defendant's Motion for Summary Judgment is DENIED on Plaintiff's wrongful detention claim.

The Court has, in this order, provided analysis as to why Defendants had probable cause to arrest the Plaintiff for armed robbery and aggravated battery based on the totality of circumstances known to them at the time of Plaintiff's arrest. However, the Defendants' investigation of the robbery earlier in the day did not end with Plaintiff's arrest. Defendants continued their

24

investigation after receiving consent from Plaintiff's husband to search his vehicle, which Defendants identified as the crime scene.

During Defendant Gray's search of the vehicle, he did not locate a weapon, blood, or any evidence of pepper spray. However, this absence of evidence, Plaintiff argues, forecloses a summary judgment finding for Defendants as to Plaintiff's continued detention, as there is an issue of material fact whether probable cause still existed. This Court agrees.

Defendants, in moving for summary judgment and in their reply, argue that probable cause was present throughout Plaintiff's initial arrest, continued detention, and still existed to support charging her with multiple crimes. However, because the search of Plaintiff's husband's vehicle did not uncover any evidence of the alleged robbery, this Court finds there is a genuine issue of material fact as to whether probable cause existed after the search of the vehicle to justify Plaintiff's continued detention. Therefore, Defendants Motion for Summary Judgment is DENIED as Plaintiff's wrongful detention claim.

### D. Defendants Are Not Entitled to Summary Judgment on Plaintiff's Malicious Prosecution Claim.

Under Illinois law, in order to prevail on a claim of malicious prosecution, the plaintiff must demonstrate five elements: 1. the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; 2. termination of the proceeding in favor of the plaintiff; 3. the absence of probable cause; 4. malice; and 5. damages. See *Swick v. Liautaud*, 169 Ill.2d 504, 512, 662 N.E.2d 1238, 215 Ill. Dec. 98 (1996).

The Defendants argue Plaintiff cannot show there was no probable cause. Defendants point to the Plaintiff's statements confirming her involvement in picking up Ms. Newquist, a physical altercation between Ms. Newquist and the two other passengers in Plaintiff's car, and the removal of Ms. Newquist from the car. (d/e 18, p. 8). Defendants argue Ms. Newquist identified Plaintiff as the driver of the vehicle during the robbery and provided corroborating information regarding Plaintiff's vehicle and personal information. *Id.* This corroborating information included Plaintiff's cell phone number and description the vehicle eventually located by the Defendants. This information, Defendants argue, along with Ms. Newquist's injuries, support a finding of probable cause sufficient to initiate charges and prosecution.

26

Plaintiff contends there was no probable cause for her arrest, or for charging her with various crimes. (d/e 20, pp. 10-14). The Court has already determined that probable cause existed for Plaintiff's initial arrest, but in a malicious prosecution claim, a plaintiff must prove there was no probable cause to charge her with a crime. Plaintiff argues, however, that, even if the Court finds there were probable cause to make an arrest, that a probable cause determination is fluid and, as evidence develops, probable cause may wane. (d/e 20). Plaintiff specifically notes that even if there were probable cause to believe Plaintiff committed a crime before she was arrested, that probable cause dissipated after officers failed to find any evidence of the alleged crimes in the vehicle allegedly utilized in the crime. (d/e 20, p. 14).

Plaintiff specifically points to the lack of blood, sharp object, or odor of pepper spray in her husband's vehicle. This vehicle was the "scene of the crime" based on Ms. Newquist's account. Plaintiff argues that, after the Defendants failed to find evidence of a crime in the vehicle driven by the Plaintiff during the crime on the date in question, there was less of a likelihood Plaintiff committed the alleged crime.

Defendants argue that probable cause existed for Plaintiff's arrest, detention, and prosecution during the entirety of their interaction on October 21, 2022. Defendants do not believe that probable cause ever waned, even after a search of Plaintiff's husband's vehicle did not uncover additional evidence supporting Ms. Newquist's allegations.

The lack of physical evidence in Plaintiff's husband's vehicle does not negate the probable cause that existed at the time of Plaintiff's arrest. However, the lack of evidence after the search of the vehicle does challenge whether a reasonable officer would believe probable cause existed to charge Plaintiff with a crime. Given the ongoing investigation and search did result in evidence to further support Ms. Newquist's allegations, the Court finds a genuine issue of material fact exists regarding whether probable cause remained to charge Plaintiff with a crime. Therefore, Defendants Motion for Summary Judgment as to Plaintiff's malicious prosecution claim is DENIED.

**E.  Defendants are not Entitled to Qualified Immunity.**

A defendant is entitled to qualified immunity in the Fourth Amendment context if a reasonable officer could have believed that

"arguable" reasonable suspicion (for a traffic stop) or "arguable" probable cause (for an arrest) existed to detain the plaintiff. See *Huff v. Reichert,* 744 F.3d 999, 1007 (7th Cir. 2014) (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) (arguable reasonable suspicion and probable cause are established "when a reasonable officer 'in the same circumstances and . . . possessing the same knowledge as the officer in question could have reasonably believed that [reasonable suspicion or] probable cause existed in light of well-established law.'").

A government actor is entitled to qualified immunity unless the plaintiff shows that: (1) the facts, read in favor of the non-moving party, amount to a constitutional violation; and (2) the constitutional right was clearly established at the time of the alleged violation. See *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019); *Leiser v. Kloth,* 933 F.3d 696, 701 (7th Cir. 2019), cert. denied, 140 S. Ct. 2722, 206 L. Ed. 2d 856 (2020) (qualified immunity is an affirmative defense, but once a defendant properly raises the defense, the burden shifts to the plaintiff to defeat it). A Court need not always address both questions in the qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 236-42, 129 S. Ct. 808, 172 L. Ed. 2d 565

(2009). "[I]f the law was not clearly established, there is no need to tackle the (often harder) question whether the challenged conduct violated the Constitution." *Rainsberger*, 913 F.3d at 647. But where the law was clearly established, both qualified immunity questions must be addressed. *Id.*

Defendants argue that qualified immunity is appropriate here because it shields from liability police officers "who act in ways they reasonably believed to be lawful." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987). Defendants further argue that qualified immunity provides "ample room for mistaken judgment" and protects all but the plainly incompetent and those who knowingly violate the law." (d/e 18, p. 10). The Court has previously found that a genuine issue of material fact remains that allows for a reasonable jury to make two differing conclusions regarding whether the Defendants had probable cause to detain Plaintiff after the search of her husband's vehicle and whether probable cause existed to substantiate charging Plaintiff with a crime.

If probable cause did not exist after the vehicle search, the Defendants could have violated Plaintiff's clearly established right to be free from an unreasonable seizure and improper detention. As a

result, the Court cannot find that Defendants are entitled to qualified immunity. See *Nettles-Bey v. Williams*, 819 F.3d 959, 961 (7th Cir. 2016) (holding that where the admissible evidence would permit two inferences, one of which would implicate violations of a plaintiff's clearly established constitutional rights, the case must proceed to trial, and the officers are not entitled to qualified immunity). Therefore, Defendants' Motion for Summary Judgement based on qualified immunity is DENIED.

## VI.    CONCLUSION

Defendants have failed to carry their burden of showing an absence of issue of material fact relating to Plaintiff's wrongful detention and malicious prosecution claims. However, Defendants are entitled to summary judgment as to Plaintiff's false arrest claim. Therefore, Defendants' Motion for Summary Judgment (d/e 18) is GRANTED in part and DENIED in part. Plaintiff may proceed to trial on her wrongful detention claim and malicious prosecution claim.

**IT IS SO ORDERED.**
**ENTERED: October 1st, 2025.**
**FOR THE COURT**

/s/ Sue E. Myerscough

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**

31